FILED'09 APR 15 15:42USDC-ORE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

GARY L. MYERS,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civ. No. 07-1877-AA

OPINION AND ORDER

---

MERRILL SCHNEIDER
P.O. Box 16310
Portland, OR 97292-0319
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

THOMAS M. ELSBERRY
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
    Attorneys for Defendant

1     - OPINION AND ORDER

AIKEN, District Judge:

Plaintiff Gary Myers ("Myers") seeks judicial review of the Social Security Commissioner's final decision denying his application for benefits under Titles II and XVI of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1954, Myers completed high school. Tr. 66, 288. Myers reports work as a marine mechanic. Tr. 61. Myers applied for DIB on June 29, 2004, alleging disability due to cervical and lumbar pain since November 5, 1995. Tr. 288-90. Myers also applied for SSI. The Commissioner denied these applications initially and upon reconsideration. Tr. 291-300.

Myers appealed these decisions and an Administrative Law Judge ("ALJ") held a hearing on February 5, 2007. Tr. 310-50. The ALJ issued his decision on August 22, 2007. Tr. 20-32. The ALJ found Myers disabled under Titles II and XVI of the Act between November 5, 1995, and April 24, 1997, but found that his disability had ceased as of April 25, 1997. Tr. 32. The Appeals Council reversed the ALJ's finding that Myers was eligible for disability benefits between November 5, 1995 and April 24, 1997, because more than 12 months had passed between the cessation of disability and Myers's application for benefits. Tr. 8-10. Myers now seeks judicial review of the finding regarding cessation of his disability.

## DISABILITY ANALYSIS AND COMMISSIONER'S FINDINGS

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

2    - OPINION AND ORDER

mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ found that Myers had not engaged substantial gainful activity since his alleged onset date. Tr. 24;  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

At step two, the ALJ determined that Myers's degenerative disc disease (status post cervical discectomy)  was "a severe medically determinable physical or mental impairment." Tr. 24-25; 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).

At step three, the ALJ found that Myers's impairment did not meet or equal a "listed" impairment in the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At step four, the ALJ evaluates the medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling ("SSR") 96-8p (*available at* 1996 WL 374184).  The ALJ uses this information to determine if the claimant can perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If not, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

3      - OPINION AND ORDER

Between November 5, 1995, Myers's alleged onset date, and April 24, 1997, the ALJ assessed

Myers's RFC as follows:

> [F]rom November 5, 1995 through April 24, 1997, the claimant had
> the residual functional capacity to perform light work except he was
> moderately limited in the ability to reach with the bilateral upper
> extremeties, including overhead, and moderately limited in the abiltiy
> to perform gross manipulation with the bilateral hands.  He was
> significantly limited in the abiltiy to perform simple, repetitive tasks
> due to moderate to severe pain.

Tr. 25.  The ALJ found that this RFC precluded Myers's past relevant work during this time period.

Drawing upon the testimony of a vocational expert, the ALJ also found that Myers's RFC precluded

performance of work in the national economy during this period.  Tr. 25-26.  The ALJ therefore

found Myers disabled within the meaning of the Act between November 5, 1995, and April 24, 1997.

Tr. 26.

However, the ALJ also found that Myers's disability had not continued to the date of the

decision, and that Myers experienced "medical improvement" relating to his ability to perform work

in the national economy as of April 25, 1997.  Tr. 26-30.  20 C.F.R. §§ 404.1594(f)(3)-(6),

416.994(f)(3)-(6).  Specifically, the ALJ assessed Myers's RFC after April 25, 1997 as follows:

> The claimant has the residual functional capacity to perform light
> work except he is slightly limited in the abiltiy to reach, including
> overhead, with the bilateral upper extremities.  He is slightly limited
> in performing gross manipulation with the bilateral hands.  He is
> slightly limited in the abiltiy to perform simple, repetitive tasks due
> to slight to moderate pain requiring only occasional medication.

Tr. 28.  The ALJ found that this RFC precluded performance of Myers's past relevant work

beginning April 25, 1997, but that Myers was able to perform other work in the national economy

as an assembler, cashier, housekeeper, or fast foods worker. Tr. 30-31; 20 C.F.R. §§ 404.1594(f)(7)-

4      - OPINION AND ORDER

(8), 416.994(f)(7)-(8). The ALJ therefore found Myers not disabled as of April 25, 1997. Tr. 31.

The Appeals Council adopted the ALJ's reasoning and findings, except for the finding that Myers was entitled to a period of disability between November 5, 1995 and April 24, 1997. Although the Appeals Council agreed with the ALJ's findings at steps one, two, three, four, and five, it reversed the ALJ's finding that Myers was eligible for benefits during this period, because more than twelve months elapsed between the date Myers's disability ended (April 25, 1997) and the date Myers filed his DIB application (June 29, 2004). Tr. 9. The Appeals Council therefore found that Myers was not entitled to disability benefits under the Act. *Id.* (citing 20 C.F.R. § 404.621(d)).

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Myers challenges the finding that his disability ceased as of April 25, 1997.[1] Specifically,

---

[1]Myers does not challenge the ALJ's evaluation of the medical evidence or his credibility for the period prior to April 25, 1997.

Myers argues that the ALJ erred in the evaluation of his credibility and the relevant medical evidence, and in his assessment of lay witness testimony. Accordingly, Myers asserts that the ALJ erroneously found that he retains the RFC to perform work in the national economy as of April 25, 1997.

I.    **Credibility**

The ALJ found Myers's statements "concerning the intensity, persistence and limiting effects of [his] symptoms not entirely credible beginning on April 25, 1997." Tr. 29. Myers challenges this assessment, asserting that the ALJ improperly evaluated his activities of daily living, frequency of treatment, and medical record.

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is

not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ's credibility assessment noted that Myers's activities of daily living as of April 25, 1997 were inconsistent with his allegations of total disability. Tr. 30. The ALJ noted that these activities included preparing meals three times per day, performing weekly sweeping and vacuuming, doing laundry and shopping two times per month. Tr. 29. The ALJ also noted that Myers "putters around" outside, birdwatches, drives a car, reads, watches televisions, and swims. *Id.* The ALJ concluded that these activities were inconsistent with Myers's allegations of disability. Tr. 30.

Myers argues that the ALJ's references are not analagous to work activity. However, the ALJ may consider "whether a claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040 (citing *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.3d 341, 346 (9th Cir. 1991) (*en banc*); *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989)). This is not a finding that the claimant's activities are equivalent to work activity; it is a finding that the claimant's activities do not support the alleged level of disability. *Id.* The ALJ's appropriately considered Myers's reported activities under this standard.

The ALJ also cited Myers's "routine and conservative" medical treatment, including "significant gaps in the claimant's history of treatment." Tr. 30. The ALJ discussed Myers's surgical history and found that Myers's surgery was successful and did not support his allegations of disability after April 25, 1997. *Id.* The record supports this finding. In April 1997, two treating physicians, Drs. Brett and Takacs, found Myers medically stationary and released him to sedentary to light work. Tr. 162, 172. In June 1997 Myers declined narcotic painkillers, and on August 21, 1997, treating physician Dr. Takacs noted that Myers requested conservative care and required "no additional medical care." Tr. 167, 169-70. Treatment notes from 2004 reflect no treatment for

Myers's cervical impairment, and on April 12, 2004, Myers reported no radicular symptoms associated with his cervical impairment. Tr. 204-07, 210. Myers reported cervical pain on August 25, 2004, but no treatment was prescribed for his cervical impairment. Tr. 225-26. Concurrent treatment notes instead address Myers's lumbar complaints. Tr. 228-30. Accordingly, the ALJ's finding that Myers sutilized "routine and conservative" treatment for his cervical impairment during this period is based upon the record.

The ALJ also noted that "the record reflects significant gaps" in Myers's treatment history after April 25, 1997. Tr. 30. The record shows no physician visits in 1998 or 1999 and contains only isolated physician visits in 2000, 2002, and 2003. Tr. 175, 177-78. The record therefore supports the ALJ's finding that "significant" gaps arise in Myers's treatment history.

When an ALJ discredits a claimant's allegations based on the failure to seek treatment, the ALJ must consider reasons that a claimant did not seek treatment. SSR 96-7p at *7-8 (*available at* 1996 WL 374186). The ALJ must consider "explanations that the individual may provide," for example, efforts an individual makes to structure his daily activities "so as to minimize symptoms to a tolerable level or eliminate them entirely . . ." *Id.* at *8. Myers alleges that the ALJ failed to consider this standard in finding him not credible and maintains that he relieves pain by lying down, elevating his feet, and restricting his activities. *Id.* at 21. However, the ALJ noted Myers's other daily activities, discussed above, and found them inconsistent with Myers's "complaints of totally disabling symptoms and limitations." Tr. 30.

Because the ALJ's citation to Myers's failure to seek treatment is based upon the record, and because the ALJ discussed Myers's daily activities, this court finds that the ALJ adequately considered Myers's credibility under the Commissioner's standards described in SSR 96-7p.

Finally, Myers asserts that his hearing testimony establishes that he attempted to obtain medical treatment, specifically steroid injections for his back, but that such treatment was not allowed by his insurance company. Tr. 341. The record shows that pain specialist Dr. Blatt and an unidentified medical provider both suggested Myers obtain an epidural injection in August 2004. Tr. 226, 236. The record does not address whether Myers was denied insurance coverage for this recommended treatment. However, in October 2006, neurologist Dr. Bunker stated that an epidural injection was not a suitable treatment. Tr. 255. Regardless, whether Myers did not seek treatment in 2004 because of the lack of insurance coverage does not explain his failure to seek treatment throughout the period beginning April 25, 1997.

For all of these reasons, the ALJ's credibility finding is affirmed.

## II.    Medical Source Statements

Myers asserts that the ALJ's medical improvement determination erroneously rejected the opinions of Dr. Takacs and physical therapist Christopher Tutt. The court addresses these opinions as they relate to the ALJ's finding of medical improvement beginning April 25, 1997.

An ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician. *Id.* If the opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Id.*

Physical therapists are "other medical sources" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(d); 416.913(d). Such sources may establish the severity of an impairment and

how it affects the claimant's ability to work. *Id.*

A.    **Physical Therapist Christopher Tutt**

Myers contends that the ALJ erroneously rejected Tutt's physical capacity test results in favor

of work restrictions submitted by treating physician Dr. Brett.

Tutt evaluated Myers's physical capacity on May 29, 1997. Tr. 185-191.[2] Tutt performed

an evaluation only and did not treat Myers. In contrast, Dr. Brett treated Myers between May 16,

1996, and April 23, 1997. Tr. 141-51. Dr. Brett temporarily restricted Myers from all work on May

16, 1996. Tr. 165. On August 19, 1996, Dr. Brett preformed a cervical discectomy and fusion. Tr.

152- 52. On September 5, 1996, Dr. Brett temporarily restricted Myers from lifting more than ten

pounds, and from "performing any repetitive and/or heavy exertion with the upper extremities of

maintain[ing] any stationary or awkward neck position that aggravates discomfort." *Id.* Dr. Brett

again temporarily restricted Myers from all work on October 17, 1996, and temporarily restricted

Myers from lifting more than thirty-five pounds on December 12, 1996. Tr. 161. Dr. Brett released

Myers to his "regular" occupation without restrictions on January 21, 1997, and March 31, 1997.

Tr. 163. On April 23, 1997, Dr. Brett permanently restricted Myers to lifting no more than thirty-

five pounds, and again restricted Myers from performing upper extremity exertion or maintaining

an awkward neck position. Tr. 162.

The ALJ cited these restrictions. Tr. 24. The ALJ found that Dr. Brett considered Myers

medically stationary, with permanent restrictions from lifting or carrying more than thirty five

pounds, performing repetitive or heavy upper extremity exertion, and from "stationary or awkward

---

[2]The ALJ referred to a "June 4, 1997," physical capacity evaluation. Tr. 26. Dr. Takacs
stated that Tutt conducted his examination on this date, and the ALJ apparently transcribed the
error.

neck positions." *Id.* (citing ex. 2F).

Absent clear and convincing reasons, the ALJ must give greater weight to treating physician opinions than that of examining medical sources. *Lester*, 81 F.3d at 830. Dr. Brett's work restrictions are accompanied by clinical notes during the relevant period. Tr. 141-45. These restrictions are therefore adequately supported and the ALJ appropriately relied upon Dr. Brett's opinion. The ALJ's findings regarding Dr. Brett's work restrictions are therefore affirmed.

Myers also contends that the ALJ erroneously rejected Tutt's opinion that Myers could not perform a full range of light work.

Based upon Myers's reports of discomfort, Tutt found that Myers would find it "difficult" to repetitively use his left upper extremity, lift or carry greater than eleven pounds occasionally, and exert a push/pull force greater than forty pounds. Tr. 190. Tutt did not quantify the extent to which Myers could reach overhead. Based upon Myers's conduct in evaluation, Tutt concluded that Myers would "fit into the Sedentary-Light category for physical demand characteristics of work." Tr. 190. Tutt also stated that Myers was asked to complete a test which measures "perceived level of functioning." *Id.* Here Tutt noted that Myers "rated himself in the sedentary category which is slightly lower than his observed level of functioning." *Id.*

The ALJ's medical improvement finding noted Tutt's physical capacity evaluation and conclusion that Myers could perform sedentary to light work. Tr. 26. Under the Commissioner's regulations, a finding that an individual may perform light work generally includes a finding that the individual may perform sedentary work. 20 C.F.R. §§ 404.1567(b), 416.067(b). The ALJ's finding that Myers could perform light work with postural restrictions in reaching overhead and performing gross manipulations with his hands is not inconsistent with Tutt's opinion that Myers would find

repetitive upper extremity use "difficult." Instead the ALJ accepted Tutt's opinion that Myers could

perform sedentary to light work, with additional limitations.

Regarding Tutt's suggestion that Myers's would find continuous walking or standing

difficult, the ALJ rejected Myers's testimony to this effect. Tr. 29. The ALJ therefore had no

obligation to accept Tutt's report to the extent that it is based upon Myers's reports and volitional

test results. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ failure to discuss

this aspect of Tutt's report is therefore inconsequential.

### B.    Treating Physician Dr. Takacs

Myers also contends that the ALJ disregarded treating physician Dr. Takacs's statement that

Myers can perform "sedentary to light" work, with limited range of motion. As noted, a finding that

a claimant can perform light work generally includes a finding that the claimant may perform

sedentary work. 20 C.F.R. §§ 404.1567(b), 416.067(b). The ALJ accepted Dr. Takac's opinion that

Myers could perform sedentary to light work for the period beginning April 25, 1997, and this

finding is affirmed.

In summary, the ALJ's evaluation of the medical evidence pertaining to the ALJ's finding

that Myers experienced medical improvement as of April 25, 1997, is affirmed.

### III.    The ALJ's Duty to Develop the Record

Myers asserts that the ALJ failed to follow the Commissioner's administrative ruling

regarding the ALJ's duty to call a medical advisor. See SSR 83-20).

When an ALJ has found a claimant disabled and must determine an onset date, a medical

expert must be consulted. SSR 83-20 at *1 (*available at* 1983 WL 31249), *Armstrong v. Comm'r*,

160 F.3d 587, 590 (9th Cir. 1998). However, the ALJ is not obligated to call a medical expert under

SSR 83-20 when the ALJ determines that the claimant is not disabled. *Sam v. Astrue*, 550 F.3d 808, 809 (9th Cir. 2008).

Myers does not dispute the ALJ's finding regarding the period prior to April 25, 1997. Instead, Myers submits that, under SSR 83-20, the ALJ was required call a medical expert regarding the lack of medical records from August 21, 1997 to September 10, 2000. Myers specifically asserts that the ALJ should have called a medical expert to determine the onset date of his degenerative disc disease and neck pain, interstitial fibrosis, and lumbar impairment symptoms.

However, the ALJ found Myers's degenerative disc disease and neck pain disabling between November 5, 1995, and April 24, 1997. Tr. 26 (finding that Myers could not perform work in the national economy due to the combined effects of his degenerative disc disease and post-cervical discectomy). Myers does not suggest that the ALJ should have found these impairments disabling at an earlier date. Therefore, the court therefore declines to address the onset of these impairments in light of SSR 83-20.

Furthermore, the ALJ did not find Myers's interstitial fibrosis or lumbar impairment symptoms disabling at any point in his decision. The ALJ is not required to call a medical expert under 83-20 if an impairment is found not to be disabling. *Sam*, 550 F.3d at 809. Therefore, the ALJ was not obliged to call a medical expert regarding these impairments.

## IV.    Lay Testimony

Next, Myers asserts that the ALJ erroneously rejected lay witness testimony submitted by Peggy O'Dell.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3), 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give reasons germane to the witness for rejecting his testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

O'Dell completed a "third party report" on July 23, 2004. Tr. 95-103. O'Dell stated that Myers cares for his dog, but cannot walk, carry, lift, perform yardwork, or work on his car. Tr. 96. O'Dell later stated that Myers can walk a half block before requiring rest. Tr. 100. O'Dell stated that Myers has difficulty sleeping because he cannot get comfortable and is "always in pain." Tr. 96. O'Dell also stated that Myers has difficulty shaving because he can't stand long. *Id.* O'Dell wrote that Myers can't stand long enough to cook, and is "very slow at everything he does" and "walks very bad now." Tr. 97. O'Dell stated that Myers cleans his trailer and that she and his friends vacuum. Id. O'Dell stated that Myers goes outside and drives a car daily (Tr. 98), and socializes with others daily. Tr. 99. Finally, O'Dell endorsed that Myers impairments affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, and climb stairs. Tr. 100. Finally, O'Dell wrote that Myers does not handle stress well.

The ALJ noted O'Dell's written statement that Myers reports that he is "always" in pain, unable to get comfortable, and unable to "lift much," bend, reach, or walk more than one block. Tr. 29. The ALJ also noted O'Dell's report that Myers socialized with O'Dell and is able to go out alone. *Id.* The ALJ concluded that O'Dell has a "vested interest in the outcome of this matter," and that O'Dell relied "at least in part" upon Myers's subjective complaints which the ALJ noted were

14    - OPINION AND ORDER

unsubstantiated by medical evidence. Tr. 30. Accordingly, the ALJ assigned O'Dell's testimony "little weight." *Id.*

The Commissioner asserts that the ALJ appropriately found O'Dell "vested" in Myers's present application for benefits because she had known Myers for twenty-one years. An ALJ may note a lay witness's desire to help a claimant. *Gregor v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). However, the ALJ may not reject testimony simply because a claimant desires benefits; such rejection is contrary to the purpose of obtaining benefits. *Ratto v. Sec'y*, 839 F. Supp. 1415, 1428 (D. Or. 1993). For this reason, the ALJ's finding that O'Dell is "vested" in Myers benefit application is not sustained.

However, the ALJ's remaining findings are based upon appropriate legal standards. Lay witnesses may not construe medical opinions; lay testimony is limited to observations. *Lewis*, 236 F.3d at 512. The limitations described by O'Dell are unsupported by the medical evidence discussed above. The ALJ may reject lay witness testimony inconsistent with the medical evidence. *Id.* Additionally, the ALJ found that O'Dell relied, in part, on Myers's subjective complaints, which the ALJ found not credible. For these reasons, the ALJ's findings regarding O'Dell's testimony are affirmed.

## V.    RFC Findings

Myers finally contends that the ALJ's questions to the vocational expert at were based upon an erroneous RFC assessment and therefore without value.

To sustain the burden of showing that the claimant can perform other work existing in the national economy, the Commissioner may rely upon the testimony of a vocational expert. *Tackett*, 180 F.3d. at 1101. Here, the ALJ solicited testimony from a vocational expert and based his findings

findings on Myers's medical improvement beginning April 25, 1997 and the vocational expert's testimony. Tr. 31, 343-48.

The ALJ's questions to the vocational expert must include properly supported limitations, but the ALJ need not include limitations unsupported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Myers fails to show error in the ALJ's RFC assessment pertaining to the period beginning April 25, 1997, discussed above. Therefore, the ALJ's questions to the vocational expert were properly supported. For this reason, the ALJ's finding that Myers may perform work existing in the national economy beginning April 25, 1997 is upheld.

## **CONCLUSION**

The findings that Myers did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence in the record. Therefore, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this _15_ day of April, 2009.

_____
Ann Aiken
United States District Judge